1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RENEE JANINE PULIDO,                    No. 2:14-CV-2611-CMK

12              Plaintiff,

13        vs.                                <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,

15              Defendant.

16   _____/

17

18        Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

23   motion for summary judgment (Doc. 19).

24   / / /

25   / / /

26   / / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on April 19, 2011.  In the application, plaintiff claims that disability began on October 1, 2008, but later amended the alleged onset date to November 30, 2009.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 28, 2013, before Administrative Law Judge ("ALJ") Amita B. Tracy.   In a March 14, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): an affective disorder, a personality disorder, an anxiety disorder, obesity, mild degenerative disc disease of the lumbar spine, history of bilateral shoulder impairments status-post three surgeries, polysubstance dependence disorders, and chronic obstructive pulmonary disorder with continued tobacco use;

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity: the claimant can perform light work; she can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolding, frequently balance, stoop, kneel, and crouch, and occasionally crawl; she should engage in no work activity requiring overhead reaching bilaterally secondary to pain, or requiring exposure to atmospheric conditions secondary to COPD; the claimant should have no exposure to hazards such as moving machinery and unprotected heights as a precautionary measure secondary to the side effects of medications and COPD; the claimant retains the abilities to engage in simple routine, repetitive tasks with no interaction with the public; and

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on September 17, 2014, this appeal followed.

/ / /

/ / /

/ / /

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in weighing the medical opinion evidence; (2) in assessing credibility, the ALJ erred in concluding that plaintiff's daily activities indicate an ability to work; (3) the ALJ improperly characterized plaintiff as a malingerer; (4) the ALJ erred in rejecting lay witness testimony from plaintiff's daughter, Natalie Taylor; and (5) hypothetical questions posed to the vocational expert failed to

1    account for all of plaintiff's limitations.

2          **A.     Evaluation of Medical Opinions**

3                 The weight given to medical opinions depends in part on whether they are

4    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

5    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

6    professional, who has a greater opportunity to know and observe the patient as an individual,

7    than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

8    (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

9    to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

10   (9th Cir. 1990).

11                In addition to considering its source, to evaluate whether the Commissioner

12   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

13   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

14   uncontradicted opinion of a treating or examining medical professional only for "clear and

15   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

16   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

17   by an examining professional's opinion which is supported by different independent clinical

18   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

19   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

20   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

21   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

22   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

23   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

24   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

25   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

26   without other evidence, is insufficient to reject the opinion of a treating or examining

4

1   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

2   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

3   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

4   see also Magallanes, 881 F.2d at 751.

5               Plaintiff argues that the ALJ improperly evaluated the opinions of Drs. Petersen,

6   Branscum, Brimmer, Whaley, and Alexander.  Plaintiff also argues that the ALJ simply ignored

7   the opinion of Dr. Tarasenko.

8               1.      Drs. Petersen and Branscum

9               As to Drs. Petersen and Branscum, the ALJ stated:

10          . . .Michael S. Petersen, M.D., opined in March 2011 that the claimant
            should not lift, push, or pull over ten pounds with her left arm, nor do any
11          type of repetitive reaching or lifting above shoulder level on the left
            (Exhibit 28F at 40).  In May 2011, John Branscum, M.D., opined that the
12          claimant was precluded from lifting greater than ten pounds below
            shoulder height, reaching, pushing ,pulling, and use of either upper
13          extremity at shoulder height or above (Exhibit 9F at 22).  Partial weight is
            given to these qualified medical examiner opinions because other opinion
14          evidence supports slightly modified limitations.  The residual functional
            capacity above is not entirely inconsistent with their opinions and contains
15          certain limitations assessed by the physicians where supported by the
            record as a whole.

16

17  According to plaintiff, the court should reverse because ". . .the ALJ did not state what 'other

18  opinion evidence' motivated her to give only 'partial weight' to the medical opinions of Dr.

19  Petersen and Dr. Branscum."

20              The court does not agree.  A review of the hearing decision reflects that the ALJ

21  provided a detailed analysis of medical opinions from Drs. Brimmer and Whaley (discussed

22  below).  These opinions support the ALJ's conclusion that the limitations opined by Drs.

23  Petersen and Branscum should be "slightly modified."  Specifically, Drs. Brimmer and Whaley

24  opined that plaintiff is not limited to the degree found by Drs. Petersen and Branscum.

25  / / /

26  / / /

2.    <u>Drs. Brimmer and Whaley</u>

As to Dr. Brimmer, the ALJ stated:

> Board certified internist Jenna Brimmer, M.D., consultatively examined
> the claimant in July 2011 (Exhibit 11F at 3) The claimant's chief
> complaints were primarily her mental state and shoulder problems.  The
> claimant explained that she had decreased range of motion and pain with
> pushing and pulling and raising her arms above her head, with the ability
> to lift a maximum of five pounds.  The claimant informed Dr. Brimmer
> that she did not smoke cigarettes; but she was using tobacco products
> regularly in March 2011 (Exhibits 11F at 4, and 23F at 59; *but see*
> Exhibits 28F at 52, and 32 F at 68).  Dr. Brimmer diagnosed the claimant
> with bilateral shoulder pain with decreased range of motion and some
> weakness, history of chronic obstructive pulmonary disease with normal
> pulmonary examination, history of thyroid cancer, low back pain without
> objective abnormalities, bipolar disorder, and alcohol abuse (Exhibit 11F
> at 7).  She opined that the claimant had no limitations for standing,
> walking, and sitting, could lift and carry twenty pounds occasionally and
> ten pounds frequently and occasionally climb ladders and crawl.  Dr.
> Brimmer assessed occasionally bilateral reaching, and the avoidance of
> hazards secondary to alcohol abuse (Exhibit 11F at 7-8).  Partial weight is
> given to Dr. Brimmer's assessment because the record as a whole supports
> greater exertional limitations.  Dr. Brimmer did not give reasonable
> consideration to the claimant's subjective reports of pain and self-reported
> limitations.

Regarding Dr. Whaley, the ALJ stated:

> A State agency medical consultant determined in September 2011 that the
> claimant could engage in exertionally light activity with no reaching above
> shoulder level secondary to pain, and respiratory precautions secondary to
> possible history of COPD (Exhibits 2A and 15F).  In March 2012, another
> State agency medical consultant [Dr. Whaley] affirmed the initial
> determination (Exhibit 25F).  Partial weight is given to the consultants'
> assessment because the record supports slightly greater postural
> limitations.

Plaintiff argues that the ALJ erred because she "did not set forth what 'part' of her [Dr.

Brimmer's] medical opinion she accepted, and what 'part' of her [Dr. Brimmers's] opinion she

rejected."  As to Dr. Whaley, plaintiff argues that "the ALJ has to be more explicit with respect

to even non-treating and non-examining doctors."

/ / /

/ / /

1    The court fails to see any error prejudicial to plaintiff.  Specifically, Drs. Brimmer

2    and Whaley opined as to limitations which are <u>less restrictive</u> than allowed by the ALJ's residual

3    functional capacity finding.  The ALJ determined that the doctors' restrictions failed to

4    adequately account for plaintiff's pain and self-reported limitations.  In any event, the hearing

5    decision adequately sets forth which portions of the doctors' opinions were accepted and which

6    were not by comparing the summaries of the opinions with the ALJ's residual functional capacity

7    assessment.  Those opinions included in the residual functional capacity assessment were

8    accepted, and those which were not included were not accepted for the reasons outlined in the

9    decision (i.e., because Drs. Brimmer and Whaley failed to sufficiently account for plaintiff's pain

10   symptoms and self-reported limitations).

11        3.    Dr. Alexander

12        As to Dr. Alexander, the ALJ stated:

13        . . .The claimant was noted in October 2009 by Marsha Alexander, M.D.,
          to have received treatment for pneumonia and bronchitis, but was
14        recovering and could have shoulder surgery on or after November 2009
          (Exhibit 7F at 6).
15
                    * * *
16
          Dr. Alexander discharged the claimant in January 2011 with the diagnoses
17        of pneumonia, bronchitis, and cough (Exhibit 7F at 4-5).  However, a chest
          x-ray at the emergency department was unremarkable and showed no signs
18        of pneumonia (Exhibit 5F at 3).
19                  * * *
20        Dr. Alexander indicated in December 2012 that the claimant could lift and
          carry ten pounds frequently, stand or walk for three hours, and sit for four
21        hours (Exhibit 38F at 2).  She checked boxes indicating that the claimant
          had occasional postural limitations, and could reach, handle, or finger less
22        than occasionally (Exhibit 38F at 3).  Dr. Alexander indicated that the
          claimant would be absent from work three or more days per month
23        (Exhibit 38F at 5).  She wrote that the earliest date that these limitations
          were applicable was in 2011.  Dr. Alexander also checked boxes on
24        another form as to moderate limitations psychiatrically; she did not opine
          as to a beginning date for these limitations (Exhibit 28F at 6-7).  Partial
25        weight is given to Dr. Alexander's opinion.  There is no to insufficient
          [sic] evidence to support much of her opinion, such as the significant
26        manipulative limitations.  She failed to provide any medical explanation

7

why the claimant would be absent from work three or more days per month.  Her assessment of the claimant's psychiatric limitations are not supported by a preponderance of the evidence.  Dr. Alexander apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.

As for the claimant's psychiatric impairments, Dr. Alexander assessed in November 2009 a history of anxiety and panic attacks, and she refilled the claimant's prescription of Xanax (Exhibit 10f at 38).  Dr. Alexander assessed the claimant in December 2010 with a chronic cough, anxiety, hypothyroid, and menopause (Exhibit 10F at 45).  The claimant reported that she would be in Florida and was unsure how long she would be there.  A medical assistant wrote in May 2011 that the claimant had just begun taking medications for bipolar disorder (Exhibit 10F at 49).  A social worker wrote in June 2011 that the claimant had been diagnosed with bipolar disorder since October 2009; this form was co-signed by Dr. Alexander (Exhibit 10F at 1).  The claimant reported impulse spending, sexual indiscretions, suicide ideations, agoraphobia since the early 1970's, and other symptoms (Exhibit 10F at 3).  She also reported that she had not been drinking alcohol often, maybe once per month, but to excess and with blackouts (Exhibit 10F at 3).  It was indicated that the claimant could not complete a normal workday and workweek, or respond appropriately to changes in a work setting (Exhibit 10F at 4).  Little weight is given to this unsupported opinion.  The social worker, as well as Dr. Alexander, relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported.

Plaintiff argues that the ALJ failed to articulate "good reasons" for rejecting Dr. Alexander's opinion.  The court does not agree.  As indicated above, the ALJ rejected Dr. Alexander's opinion because it is not supported by objective clinical findings.  Plaintiff contends that, contrary to the ALJ's finding, Dr. Alexander's opinion is supported by records from the doctor's medical group which plaintiff describes as follows:

. . .A close reading of these records indicates that Dr. Alexander performed physical examinations during the period of time she has treated the plaintiff; i.e., starting on October 15, 2009, until the time she completed her medical assessment on December 11, 2012.  This longitudinal look at the claimant for over 3 years is an important factor that the ALJ apparently failed to consider (citation omitted).  Dr. Alexander was aware of the other medical problems being handled by more specialized clinicians, as she was the "referring doctor" for most of them. . . .

/ / /

Though plaintiff cites treatment notes, she fails to point to specific references in those notes to objective clinical findings supporting the doctor's opinion.  Even the selected treatment notes outlined in plaintiff's brief fail to reference clinical findings.

        4.    <u>Dr. Tarasenko</u>

As to Dr. Tarasenko, the ALJ stated:

> Valery Tarasenko, M.D., a pain medicine specialist, initially saw the claimant in June 2012 (Exhibit 40F at 2).  She [sic] diagnosed the claimant with lumbosacral facet arthropathy, myofascial pain syndrome, and lumbar herniated nucleus pulposus (Exhibit 40F at 6). . . .

Plaintiff argues that the ALJ erred by failing to discuss Dr. Tarasenko's opinion.  Specifically, plaintiff contends: "Although Dr. Tarasenko rendered an opinion concerning the underlying reasons for the claimant's pain. . ., the ALJ did not render an opinion as to the weight to be given his [Dr. Tarasenko's] medical analysis."  The court does not agree for the simple reason that, while the doctor made diagnoses, Dr. Tarasenko did not render any opinions as to plaintiff's functional capabilities.

**B.**    <u>**Plaintiff's Credibility**</u>

        The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  <u>See</u> <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  <u>See id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  <u>See id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

1    If there is objective medical evidence of an underlying impairment, the

2 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3 because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5         The claimant need not produce objective medical evidence of the
          [symptom] itself, or the severity thereof.  Nor must the claimant produce
6         objective medical evidence of the causal relationship between the
          medically determinable impairment and the symptom.  By requiring that
7         the medical impairment "could reasonably be expected to produce" pain or
          another symptom, the Cotton test requires only that the causal relationship
8         be a reasonable inference, not a medically proven phenomenon.

9         80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
          Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14 claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15 testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16 prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

17 physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19 claimant cooperated during physical examinations or provided conflicting statements concerning

20 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21 claimant testifies as to symptoms greater than would normally be produced by a given

22 impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23 Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24 / / /

25 / / /

26 / / /

Case 2:14-cv-02611-CMK   Document 21   Filed 03/25/16   Page 11 of 16

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities ... does not ...[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "... able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's daily activities, the ALJ noted:

In activities of daily living, the claimant has mild restriction. For example, the claimant can drive a car (Exhibits 3E at 8, 12F at 3, and 26F at 3 & 6). She washes clothes and dishes, sweeps, makes her bed, and sometimes dusts (Exhibit 12F at 8). The claimant can shop for groceries (Exhibit 12F at 8). She can dress herself but needs help putting on tops, perform her own hygiene, cook and wash a few dishes, but could not mop, vacuum, or do laundry because of shoulder pain (Exhibits 3E at 6 & 7, 15E at 4, and 11F at 3-4). The claimant reported she was independent for basic self-grooming, completing light chores, and preparing simple meals (Exhibit 26F at 6-7).

///

11

> In social functioning, the claimant had no to mild difficulties.  For example, she reported anxiety when she left her home but she is able to manage her symptoms if she takes her medication (Exhibits 3E at 11, and 12F at 4).  The claimant texts others a lot, goes for walks, shops in stores, visits family, and goes to church (Exhibits 3E at 9, and 12F at 8).  The claimant reported a handful of friends with whom she gets together and barbecues, visits, and celebrates birthdays (Exhibit 12F at 9).  The claimant can frequent pubs and restaurants (Exhibits 11E at 5, 23F at 78, and 26F at 4).  She reported that she got along "okay" with supervisors and co-workers when she worked (Exhibit 26F at 6).  She takes vacations to Florida, Mexico, and Los Angeles (Exhibits 4F at 15, and 10F at 12 & 45), The claimant can leave her home alone and shop in stores (Exhibits 3E at 8, 11E at 4, and 15E at 6).

The ALJ added:

> The claimant testified that she drove maybe twice a month and that her mother often drove her.  She said she could not work because of daily panic attacks and a hard time leaving home, herniated discs and tears, degenerative disc disease, insomnia, COPD, and heart disease.  She stated that she used a cane when she left home.  She denied smoking but admitting to drinking alcohol – but only every other month when she went out.  She explained that she goes to a little sports bar in town.  The claimant said that she had had a drug and alcohol problem maybe when she was in her twenties.  She described her pain as residing in her neck, lungs, and heart, as well as in her shoulders and hips.  She stated that pain medications and alcohol took the edge off or relieved her pain.  She testified that she could not lift a gallon of milk but could lift up to ten pounds, and could not bend over or bend to the side.  She said that she helps fold laundry, makes the bed, and washes dished but might need a break. . . .

As to plaintiff's credibility, the ALJ stated:

> The claimant for the most part appears partially credible.  She fails to be compliant with medications and goes out bing drinking every five to six weeks.  A preponderance of the evidence reflects improvement when she is compliant with medications; and there is too infrequent evidence of the claimant's functioning without alcohol involvement.  In addition, despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a vacation since the alleged onset date.  She vacationed in Cancun and Los Angeles in 2010, and she also visited Florida (Exhibits 4F at 15, and 10F at 12) Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated.  The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual; the treatment she has received has been essentially routine and conservative in nature.  Finally, but not exhaustively, review of the claimant's work history shows that the claimant worked only intermittently prior to the alleged disability onset date, which raises a

1         question as to whether the claimant's continuing unemployment is actually

2         due to medical impairments (*see* Exhibit 26F at 6).

3         Plaintiff argues that the ALJ improperly relied on her daily activities in assessing

4 credibility.  According to plaintiff: "The ALJ makes no direct connection between the plaintiff's

5 activities of watching television, visiting her mother, and walking to an ability to perform

6 'substantial gainful activity'" (quoting Social Security Ruling 96-8p).  Plaintiff's argument is

7 unpersuasive.  While plaintiff mentions watching television, visiting her mother, and walking,

8 she does not mention several vacations, including a trip to Cancun in 2010.  In any event, the

9 ALJ articulated other valid reasons the plaintiff does not challenge, such as conservative

10 treatment, improvement with medication compliance, and sporadic work history prior to the

11 alleged onset date.

12     **C.**     **Malingering**

13         According to plaintiff: "The ALJ attempted to paint the claimant as a

14 'malingerer.'" Plaintiff then references the following, which she states is an excerpt from the

15 ALJ's hearing decision:

16         . . . The record contains clear evidence that the claimant has occasionally
        attempted to exaggerate her conditions.  For example the claimant

17         indicates she has foot pain and shoulder pain, but her doctor observed only
        varicose veins and she did not have surgery for her shoulder.  (Exhibit

18         B29-F71).

19 A review of the hearing decision, however, reflects no such finding.  Additionally, the medical

20 records in this case only number through 41F.  Thus, there is no exhibit "F71" in the record for

21 this case, as plaintiff's cited discussion indicates.  Finally, as reflected in the ALJ's credibility

22 assessment, the ALJ in this case never found plaintiff to be malingering.

23 / / /

24 / / /

25 / / /

26 / / /

1   **D.     Lay Witness Testimony**

2         Plaintiff contends that the ALJ failed to properly consider a statement from her

3   daughter, Natalie Taylor.  Plaintiff's brief cites the record at page 23 for the ALJ's hearing

4   decision discussion of Ms. Taylor's statement.  A review of the hearing decision, however,

5   reflects no such discussion.  Moreover, a review of the entire record reflects no statement from

6   either plaintiff's daughter or someone named Natalie Taylor, and plaintiff does not cite to any.

7   **E.     Vocational Expert Testimony**

8         The ALJ may meet his burden under step five of the sequential analysis by

9   propounding to a vocational expert hypothetical questions based on medical assumptions,

10  supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

11  Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

12  Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

13  ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

14  1341 (9th Cir. 1988).

15        Hypothetical questions posed to a vocational expert must set out all the

16  substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

17  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

18  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

19  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

20  the ALJ may pose to the expert a range of hypothetical questions based on alternate

21  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

22  determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

23  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

24  / / /

25  / / /

26  / / /

14

As to the vocational expert's testimony, the ALJ stated:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, Medical-Vocational Rules 202.21 and 202.14 would direct a finding of "not disabled."  However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as a bench production assembler. . ., and a packing line worker. . . .

Plaintiff argues that the ALJ failed to account for mental limitations.  According to plaintiff: "It seems clear from the medical and other evidence that the severity of claimant's mental impairments <u>alone</u> would prevent the claimant from sustaining full-time competitive employment."  Plaintiff adds: "My conclusion is buttressed by my observation that the ALJ made her decision by isolating a specific quantum of supporting evidence to support her finding that the claimant was <u>not</u> disabled" (emphasis in plaintiff's brief).

The court rejects plaintiff's conclusory argument.  Plaintiff provides no citation to the record supporting mental limitations not included in the ALJ's residual functional capacity assessment.

///

///

///

///

///

///

///

///

///

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.      Plaintiff's motion for summary judgment (Doc. 18) is denied;

      2.      Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

      3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 24, 2016

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE